587 So.2d 908 (1991)
Edwin L. BEAN, Jr.
v.
Dr. Curtis BROUSSARD.
No. 07-CA-59478.
Supreme Court of Mississippi.
October 9, 1991.
*909 Edwin L. Bean, Jr., McComb, for appellant.
Harry R. Allen, David C. Sabine, Bryan Nelson Allen Schroeder Cobb & Hood, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and BANKS, JJ.
BANKS, Justice, for the Court:

I
Here we examine the contours of Rule 11 of the Mississippi Rules of Civil Procedure in the context of a hurriedly filed medical malpractice action. Edwin L. Bean, Jr., (Bean) appeals from an order of the Circuit Court of Amite County, imposing monetary sanctions against him, associate counsel, Sidney Landry (Landry), and the plaintiffs, Terry and Kathy LeBlanc (Terry, Kathy or LeBlancs), jointly and severally, for their part in filing a frivolous complaint against Dr. Curtis Broussard and Nurse Catherine Stokes. Bean asks that we determine whether the trial court had authority to impose sanctions against him and, if so, whether the facts of this case warrant the sanctions imposed.

II

A.
Kimberly Renee LeBlanc (Kimberly) was born on March 3, 1985, to Terry and Kathy LeBlanc. Her birth was without complications and she was developing normally until early August 1985. On August 6, 1985, Kimberly did not awaken at her usual time, and her parents became alarmed. Kathy tried to waken the infant, but to no avail. Kimberly also appeared to be experiencing difficulty with breathing. The child's condition worsened, and Kathy took her to Dr. Broussard's clinic in McComb for treatment. She was asked to complete a standard form which provided family history about the infant. During her deposition, Kathy stated that even though she told Nurse Stokes that Kimberly was allergic to penicillin, the nurse told her not to include Kimberly's allergic reaction to penicillin in the history, because Kathy was not sure. Kathy testified that she told Dr. Broussard of the infant's possible allergic reaction to penicillin.
Nurse Stokes, however, gave a different version. She testified that Kathy never verbally mentioned an allergy, nor did Kathy mark the allergy blank on the patienthistory information form.
Dr. Broussard examined Kimberly and diagnosed her as having bronchitis. He ordered an inoculation of 125 mg. of ampicillin for treatment. Kathy did not object when she was notified that the doctor was treating the baby with ampicillin. After administering the injection, Nurse Stokes told Kathy to remain on the premises for a half hour in case of complications from the medicine. Kathy stated that she waited approximately thirty minutes before leaving; Nurse Stokes stated the mother and baby did not wait, but left immediately.
Dr. Broussard and Nurse Stokes both noticed that Kimberly also was suffering from a severe diaper rash, for which Dr. *910 Broussard prescribed a salve. Before leaving, Dr. Broussard told Kathy to bring the child back if her condition worsened, and to bring her back by 9:00 the next morning regardless.
After taking the baby home, Kathy went to the drug store to have the prescriptions filled. She returned around 10:30 a.m. and, along with other members of her family, began monitoring Kimberly's progress. At approximately, 12:15 to 12:20 p.m., Kathy noticed that Kimberly was turning blue around her mouth and was having a hard time breathing. After consulting with her mother-in-law and husband, Kathy rushed the child to the Southwest Mississippi Regional Medical Center. There, despite resuscitative efforts, Kimberly was pronounced dead on arrival.

B.
The proceedings leading to this Court began some two years later on August 5, 1987, when Bean received a phone call from Landry.[1] Landry told Bean that he had been retained several months earlier by the LeBlanc's for the purpose of filing suit against Dr. Broussard and Nurse Stokes for negligence in treating Kimberly. Landry assured Bean that he had investigated the facts of the case, and the claim was meritorious. He also told Bean that he had consulted with a medical expert who advised that the suit against Broussard and Stokes had merit. Bean stated that the reason Landry gave for filing so near the deadline was that he had been unable to obtain the autopsy report from the coroner.
Bean agreed to be associated with the case and on August 6, 1987, the date the statute of limitations was to expire, he filed suit against Dr. Broussard and Nurse Stokes. In his possession at the time of filing were the Amite County Medical Services Child Health Record, Amite County Medical Services bill, Newborn Discharge Summary from Southwest Mississippi Regional Medical Center, Southwest Mississippi Regional Medical Center Emergency Room Report and Mississippi Immunization Record Certificates of Birth and Death.
Bean did not talk to the LeBlancs or the coroner, Ben Hunt (Hunt), prior to filing suit. He maintains that, throughout his association with the case, the LeBlancs would not cooperate with him but chose to deal with Landry directly.
Suit was filed in Pike County. Shortly thereafter, the discovery process began. The defendants filed a "Motion to Transfer Venue" from Pike County to Amite County on August 31, 1987, since most, if not all, of the contacts involved in the complaint occured in Amite County. The change of venue was ordered December 3, 1987.
On October 1, 1987, Bean deposed Hunt. Hunt's testimony revealed that the cause of death was not connected to an allergy to penicillin. Specifically, Hunt stated that his initial investigation of the case left him dumb-founded.[2] He contacted the State Medical Examiner, Dr. Thomas Bennett, and referred the case to him. It is important at this juncture to note that it took over six months for Hunt to receive the final report from Bennett. Bennett finally completed the report and instructed Hunt to "sign it out as sudden infant death syndrome (SIDS)." When Hunt received the final report[3], he noticed that Bennett did not think the case was SIDS-related. He also gathered that Bennett thought it best that the cause of death be left as undetermined. Of extreme significance is Bennett's statement that the cause of death was probably, at the very least, some state of starvation, as the child exhibited other findings of neglect.
The virtual death-knell to the LeBlanc case was dealt on February 5, 1988, when Kathy was deposed by defense counsel. During her testimony, Kathy revealed that she had no basis to support any of the *911 allegations of negligence lodged against the doctor and the nurse in the complaint. Most important, she stated that she added the allergy notation to the infant's immunization record after the child expired.
Bean filed his motion to withdraw as counsel on March 18, 1988. He explained that he made several calls to Landry to have him retain an expert for further review to determine if any negligence was committed by Dr. Broussard and Nurse Stokes. After receiving no response from Landry, Bean filed his motion to withdraw as associate counsel.
Realizing that the LeBlanc's claim was devoid of merit, Dr. Broussard and Nurse Stokes moved for summary judgment. Dr. Broussard's motion was dated April 8, 1988 and supported with affidavits of other doctors and documents attacking the lack of an evidentiary foundation for medical malpractice. Counsel for the LeBlanc's filed no response to the motions for summary disposition and on April 28, 1988, the court granted summary judgment in favor of the defendants and dismissed the complaint.
On April 27, 1988, Dr. Broussard requested that the court impose Rule 11 sanctions upon Bean, Landry, and the Plaintiffs, on the grounds that they signed a frivolous complaint for the purpose of delay. A hearing was had on this motion, and on June 13, 1988, the court granted a monetary sanction against Bean, Landry, and the LeBlancs jointly and severally in the amount of $10,477.44.
Aggrieved, Bean appeals to this court.

III
Bean argues that the circuit court was without authority to impose monetary sanctions against an attorney. He states that pursuant to Miss.R.Civ.P. 11(b), a court of record in this state is only permitted to impose sanctions against a party, not an attorney. Broussard takes issue with Bean's literal interpretation of the rule and maintains that trial courts are empowered via their inherent powers to regulate the administration of justice and members of the bar; and in a proper case, sanctions are within a court's power.
Settled precedent supports Broussard's assertion. Miss.R.Civ.P. 11(b) provides, in pertinent part,
If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.[4]
Though the rule speaks to the imposition of sanctions against a party and would seem thus to support Bean's argument, the official comment to the rule states this sentence is "intended to ensure that the trial court has sufficient power to deal forcefully and effectively with attorneys who may intentionally misuse the liberal, notice pleadings system effectuated by these rules." Miss.R.Civ.P. 11 comment at 36 (1991) (emphasis added). The point of the sentence was to explicate that which had been engrafted into the federal rule by court decision, the power to assess attorneys fees and costs in the event of a violation.
Reasons other than the official comment justify an interpretation of the rule permitting sanctions against an attorney. Attorneys are officers of the court and the court has inherent authority to sanction them in proper cases. Moreover, as the attorney determines most, if not all, of what goes into a pleading, the attorney is in the best position to know whether or not the pleading is frivolous. It follows that sanctions for frivolous pleadings should in most instances fall upon the attorney. Thus, in Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117 (Miss. 1989) we observed that Rule 11 "vests in our trial courts discretionary authority to impose sanctions upon parties or attorneys."
*912 In sum, pursuant to its inherent authority, the circuit court was empowered to impose sanctions against Bean, the language in the rule notwithstanding. This assignment is without merit.

IV
Bean maintains, assuming arguendo, that the court had the authority to impose sanctions against him, such sanctions were not warranted in this case as he had a good-faith belief that the LeBlanc's case had merit. Broussard retorts that imposition of sanctions was more than proper as the complaint was frivolous and filed for the purpose of delay.
Under Rule 11, sanctions are warranted when a pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay. "Filing is that which triggers the possibility of sanctions." Nationwide Mut. Ins. Co., at 1120. "[A] pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331, 1336 (Miss. 1989)
We examine Bean's claim in light of these standards. We begin with the frivolousness standard. We focus upon the information Bean had at the time he filed the complaint. On August 5, 1987, approximately one day before the statute of limitations was to expire, Landry sought to associate Mississippi counsel for filing the complaint against Dr. Broussard and Nurse Stokes. In a phone conversation, Bean was informed by Landry that he, Landry, had informally conferred with a physician who had examined the records and determined that Dr. Broussard and Nurse Stokes were negligent in that they had failed to render that degree of skill, care and diligence required by physicians and nurses. Bean was also informed by Landry that Landry had in his possession Kimberly's immunization record, Dr. Broussard's office notes, and the death certificate. The death certificate supported the allegation that Kimberly was allergic to penicillin, had been administered a penicillin derivative drug, ampicillin, and had died three hours later in the emergency room of a local hospital. He maintained that Landry told him an expert witness would be retained to guide them through the discovery phase.
On August 6, 1987, Bean received the documentation discussed in the previous day's phone conversation between himself and Landry. The documentation supported the information provided Bean by Landry in that the health-immunization record revealed that Kimberly was allergic to penicillin, that despite this notation Dr. Broussard and Nurse Stokes administered ampicillin to the child, and approximately three hours later the child died. Bean contends that this information said to him that either Dr. Broussard correctly diagnosed the infant's condition and overlooked the history given to him regarding the child's allergy, or that the doctor incorrectly diagnosed the child's condition. Thus, he agreed to become associate counsel in the case and help the LeBlancs seek redress from those in whose care they entrusted their child. We think this a proper course of action under the circumstances given the information Bean had in his possession. We hold that the filing of the complaint was neither frivolous nor filed for purposes of harassment or delay.
The trial court seemed to labor under the impression that our rule places upon attorneys signing pleadings a duty of inquiry. To be sure, the trial court seemed to suggest that no medical malpractice action may be filed absent an affidavit from an expert witness and escape Rule 11 sanctions. Broussard suggested to that court and urges here that it is a fundamental principle of Mississippi jurisprudence that an attorney preparing to file a medical malpractice complaint must, as part of her pre-filing inquiry, retain the services of a qualified expert to testify as to the duty of care owed by physicians similarly situated. In support of this proposition, he cites Phillips By and Through Phillips v. Hull, 516 So.2d 488 (Miss. 1987), Kilpatrick v. Mississippi Baptist Medical Center, 461 So.2d 765 (Miss. 1984), Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986) and Hall v. Hilbun, 466 So.2d 856 (Miss. 1985).
*913 Unfortunately for Broussard, none of the cases cited states that a medical expert need be retained before filing. Indeed, no cases, rules, or statutes impose such a requirement. The cases cited stand simply for the proposition that negligence in some cases cannot be established without expert medical testimony that the physician failed to use ordinary skill and care. Each of the cases had proceeded far beyond the pre-filing stage and do not indicate whether a medical expert was retained prior to filing. While it may be the better practice to retain an expert early on, one is not required to do so.
Broussard cites a plethora of federal cases supporting his argument that sanctions were proper and warranted in this case. His reliance is misplaced. Those cases interpret the federal rule which imposes a different standard than our Rule 11. While the federal counterpart to Rule 11 does require reasonable inquiry, Rule 11, Federal Rules of Civil Procedure, our rule does not.
Where the court has exercised its discretionary authority in such a way that it misperceives the correct legal standard, the deference customarily afforded trial courts is pretermitted because the error has become one of law. Nationwide Mut. Ins. Co., 553 So.2d at 1119. Pursuant to Miss.R.Civ.P. 11, trial courts have the authority to impose sanctions against a party or attorneys. We begin our inquiry with the filing of the complaint. At the time of filing, Bean believed that the case had merit based on the information that he had.[5] Objectively, viewed, that belief was not unreasonable. He was under no duty to make further inquiry at that time. Only during the deposition testimony of Kathy, some six months later, did he become aware that the allergy notation was added post mortem by Kathy. We have noted that our rule imposes no continuing duty which would require immediate abandonment of a claim should it later appear to be frivolous. Id. at 1120. It follows that Bean's conduct was not frivolous under our Rule 11.

V
We also conclude that the complaint was not filed for reasons of harassment or delay. There is no hint in the record of an attempt to harass. Generally speaking, where a plaintiff has a viable claim the complaint cannot be deemed as filed for purposes of harassment. See Dethlefs v. Beau Maison Development Corp., 511 So.2d 112 (Miss. 1987) ("Since Dethlefs had a justiciable claim, we are not disposed to penalize her via Rule 11 sanctions... ."). Id. at 118. While it is true that the complaint was filed when it was filed in an effort to toll the statute of limitations, mere "delay" was not the objective. The objective was to preserve or more accurately to assert what could be objectively viewed as a viable cause of action.

VI
For the foregoing reasons we reverse the judgment below insofar as it imposes sanctions against Bean and remand for the dismissal of Broussard's motion for sanctions against Bean.[6]
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] Landry's office was located in Lafayette, LA.
[2] He stated that although the child exhibited the appearance of a sudden infant death baby, there was no conclusive evidence establishing this as the cause of death.
[3] A copy of which is part of the appendix to this opinion.
[4] The rule has since been amended to provide that sanctions may be imposed on "a party, or his attorney, or both." As indicated herein, this amendment makes explicit the purpose of the rule but worked no substantive change.
[5] This much is certain, at the time the complaint was filed, Bean knew that the child had been seen by Dr. Broussard discharged and within four hours of discharge, the infant died. There was no adequate explanation for death in the record. Under these circumstances, the possibility of negligence is strong. Whether the nature of the error was a prescription, medication to which the child is allergic or simply a misdiagnosis of the child's condition, objectively speaking, one cannot consider an allegation of negligence to be frivolous.
[6] The Litigation Accountability Act of 1988 which became effective July 1, 1988, has no application to the case at bar. See Miss. Code Ann. § 11-55-5(1).