DAN M. LEE, Presiding Justice,
Opinion on Motions:
The motions before this Court for consideration this day symbolize continuing matters which are of great concern to this Court. The motion(s), entitled “MOTION TO CORRECT FACTS CONTAINED IN THOMSON’S SWORN PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS AND RESPONDENT’S MOTION FOR SANCTIONS AND OTHER RELIEF” (“Motion for Sanctions”), repre-sentes) the response to an emergency petition filed with this Court, and arises out of the legal representation of John Christian Thomson by Carlton W. Reeves, an attorney with the Jackson, Mississippi, office of the law firm of Phelps Dunbar.
Upon due consideration, three of the six justices participating in the case would impose sanctions against some of Thomson’s attorneys and three of the six justices participating in the case would not impose sanctions against any of Thomson’s attorneys for filing a petition with this Court which contained erroneous facts about events alleged to have occurred at a hearing conducted before the Marion County Chancery Court. Therefore, this Court will impose no sanctions on Thomson’s attorneys’ actions before this Court. However, I write to express my discontent with discovery and motion practices which impede the fair and efficient administration of justice in this Court and in the trial courts of Mississippi.
I.
At the time the underlying action commenced in the lower court, John Christian Thomson (“Thomson”) was facing twelve criminal indictments and was the defendant in twenty civil cases, having been accused of invading the privacy of the plaintiffs in the various cases by secretly videotaping them in a dressing room of a photography studio. Seventeen of those civil eases were pending in the Circuit Court of Forrest County, Mississippi, one civil case had been filed in the United States District Court, Southern District of Mississippi, and the remaining two civil cases were pending in the Forrest County Chancery Court, before the Honorable Sebe Dale, Jr., Chancellor. The two chancery court cases are the cases underlying the matter sub judice, and were styled as follows: (1) F. Marvin Morris, Guardian Ad Litem And Next Friend of A.J., A Minor; Mother of A.J., Individually, and Father of A.J., Individually v. John C. Thomson d/b/a Visual Arts Studio and Hattiesburg Coca-Cola Bottling Company, A Mississippi Corporation; and (2) Marvin Morris, Guardian Ad Litem of A.G., A Minor; Mrs. A.G., Mother of the Minor, Individually; and A.G.’s Grandmother, Individually v. Hattiesburg Coca-Cola Bottling Company, a Mississippi Corporation, John C. Thomson d/b/a Visual Arts Studio and John Doe. The Plaintiffs in the two chancery court cases had sought discovery, noticing the deposition of Thomson’s wife for March 5,1993. Thomson’s lawyers resisted that discovery.
A.
Three motions were noticed to be heard on the morning of March 5, 1993, at the Marion County Chancery Court Annex Building, Columbia, Mississippi, before the Honorable Sebe Dale, Jr., Chancellor, by Laura Limerick Gibbes (“Gibbes”), Thomson’s counsel: 1) a motion to certify an appeal from an order denying a stay of the trial proceedings pending resolution of criminal proceedings; and 2) a motion for a protective order which would relieve Thomson’s wife from the obligation to give deposition testimony at the deposition that was scheduled for that morning, and which would prevent discovery from being further sought from her. Erik M. Lowrey (“Lowrey”) was the attorney representing the Plaintiffs. Tom Royals (“Royals”), independent counsel representing Mary Beth Coker Thomson (“Mary Beth”), Thomson’s wife, was also present.
The chancellor refused to grant Thomson’s motion for an order granting an interlocutory appeal to this Court, and he ordered the prevailing party to prepare an appropriate *466 order reflecting his ruling for presentation to the court. Gibbes also presented Thomson’s motion for a protective order. In essence, Thomson’s position, in that motion, was that he did not consent to Mary Beth giving testimony via the proposed deposition; therefore, pursuant to M.R.E. 601, since Thomson was a party to the litigation, Mary Beth was not competent to testify as a witness in the proceedings and discovery could not otherwise be sought from her. After argument from counsel for both sides, that motion was also denied by the chancellor, whereupon Gibbes presented the chancellor a previously prepared order which reflected the chancellor’s denial of Thomson’s motion for a protective order, and Gibbes requested that the chancellor sign it. However, the chancellor refused, stating that he would follow his usual procedure of allowing counsel on the prevailing side to prepare the order, and he would enter the order at that time.[1]
Immediately after the chancellor denied Thomson’s motion for a protective order, Gibbes made an ore tenus motion for the chancellor to stay his immediately preceding ruling which denied Thomson’s motion for a protective order until such time as she could “take an emergency appeal to the Supreme Court” on the issue of spousal competency. Although previously prepared, the motion had not been filed with the court; however, upon her oral motion, Gibbes presented a written copy of the motion to the chancellor.
Lowrey, representing the Plaintiffs, argued that Thomson’s motion to stay the chancellor’s ruling was simply another tactic by Thomson’s counsel to stall the taking of Mary Beth’s deposition, and that the trial itself was scheduled to begin on April 14, one and one-half months away. After argument by Gibbes and comments by independent counsel representing Mary Beth, the chancellor denied Thomson’s motion to stay his ruling.
At that point, Lowrey expressed concern that, although the chancellor had denied Thomson’s motions which sought to prevent the scheduled deposition of Mary Beth, Thomson’s lawyers would, nonetheless, seek to delay the proceedings. That concern is revealed by the following colloquy:
MR. LOWREY: Before we go further, the last time we did this before we got to lunch [sic] further in this hearing, this Court was hit with a writ of prohibition. Do we have lawyers up in Jackson again standing by to rush over to the Supreme Court here in about the next 30 minutes while we take lunch and we get another writ Ms. Gibbes. [sic]
MS. GIBBES: I’m. simply asking the Court about a specific—
MR. LOWREY: I understand what you are asking. I’m asking a question of you as an attorney. Do we have another block of lawyers in Jackson waiting to run across the street to the Supreme Court and get a Supreme Court Judge to enjoin this chancellor from this deposition at 1:00 this afternoon or any other time of day. [sic]
MS. GIBBES: We are prepared to protect the rights of my client.
MR. LOWREY: So the answer I can assume is correct, yes.
Immediately following that exchange between Gibbes and Lowrey, Tom Royals, counsel for Mary Beth, revealed to the chancellor that he anticipated that no substantive deposition testimony would be forthcoming from Mary Beth. He stated that, “I don’t mind being candid with the Court. I have all along contemplated taking the 5th Amendment [sic] in this case.”
The motion hearings before the chancellor concluded that morning, March 5, 1993, shortly before 12:00, noon.
B.
After conclusion of the motion hearings in the Marion County Chancery Court Annex Building, Columbia Mississippi, Gibbes promptly telephoned Frank W. Trapp (“Trapp”), who was at another hearing in Mendenhall, and she also telephoned Carlton W. Reeves (“Reeves”), who was in the Jackson office of Phelps Dunbar. Gibbes Con *467 firmed with Trapp that emergency relief should be sought from the Supreme Court of Mississippi. Gibbes informed Reeves of the oral rulings of the chancellor, and then instructed Reeves to file documents with the Court which sought emergency relief regarding Mary Beth’s deposition that was scheduled for 1:00 p.m., that afternoon. At some point, prior to filing a petition for emergency relief with the Court, Reeves telephoned a staff attorney with this Court, and advised that staff attorney that a petition for extraordinary relief would be filed immediately.
The deposition of Mary Beth began at 1:00 p.m., that day, March 5, 1993. According to the transcript of the deposition proceeding, six attorneys were present at the inception of the deposition — two attorneys representing Mary Beth, two attorneys representing the Plaintiffs in the eases, a Hattiesburg attorney representing Thomson, and an attorney representing one of the co-defendants. Gib-bes, another of Thomson’s attorneys, was not present for the commencement of Mary Beth’s deposition.
Upon questioning at the deposition, Mary Beth revealed basic preliminary information concerning her personal background, such as her name, age, education, current address, and the fact that Thomson was her husband. Subsequently, at approximately 1:05 p.m., Gibbes arrived at the deposition hearing. Gibbes stated an objection for the record, the deposition continued, and later Gibbes stated another objection during the deposition. Mary Beth gave no substantive testimony, taking the Fifth Amendment for all questions other than the preliminary background questions, and the deposition was concluded at 1:17 p.m. At no time prior to the deposition, during the deposition, or at any other time on March 5, 1993, was opposing counsel informed that Gibbes had instructed an attorney with her law firm to file an emergency petition for extraordinary relief with the Supreme Court of Mississippi, seeking, among other things, a stay of Mary Beth’s deposition.
C.
A little over an hour after Gibbes had given him the instructions to do so, and fourteen minutes after Mary Beth’s deposition had concluded, Reeves, on behalf of Thomson, filed a petition for extraordinary relief with the Court at 1:31 p.m., March 5, 1993. That document was entitled “PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS” (“Petition”), and although the typewritten names of both Trapp and Reeves appear below the signature line, Reeves was the only attorney who signed the Petition, as well as the attached certificate of service.
Thomson’s Petition requested, “pursuant to Miss.Sup.Ct.R. 8 and 21, ... the issuance of an extraordinary writ, a stay of deposition and all other proceedings before the Honorable Sebe Dale, Jr., Chancellor of the Chancery Court of Forrest County, Mississippi.” The Petition also made bald allegations that Thomson and Mary Beth would be injured irreparably if Mary Beth were compelled to testify. More importantly, Thomson’s Petition alleged facts which, if true, would constitute an emergency situation necessitating immediate consideration by the Court. That language from the Petition follows:
3. In this petition, John [Thomson], on behalf of himself and his wife, seeks emergency interim relief from the Chancellor’s order finding Mary Beth in contempt of court and ordering her arrest for refusing to testify against her husband in a deposition in some of the civil matters. In addition, he seeks a stay of the execution of order of contempt.
[[Image here]]
[4] e. Rather than testify against her husband, upon the advice of counsel, petitioner will assert her spousal privilege and lack of competency to be a witness when her deposition begins at approximately 1:00 p.m. today. Relying on the advice of counsel, petitioner will continue to assert her privilege even after the trial court orders her to answer certain questions. After continuing to refuse, the Court may hold petitioner in contempt, and order that she be arrested and placed in the custody of the Marion County Sheriff’s Department.
*468 5. The issue presented by this Petition is:
May a trial court hold a spouse in contempt of court for refusing to testify against her husband when both spouses have objected to such testimony?
6. The trial court erred in at least the following respects: (a) In overruling John’s request for a Protective Order; (b) In overruling Mary Beth’s objection to the taking of her deposition; (c) In overruling John’s objection to the taking of Mary Beth’s deposition; (d) In refusing to stay the deposition pending an appeal; and (e) In refusing to enter any order ruling on John’s and Mary Beth’s motions.
[[Image here]]
12. Mary Beth and John will be injured irreparably if Mary Beth is compelled to testify. No subsequent order of this Court on appeal can fully and effectively remedy such a violation. By contrast, however, plaintiffs will suffer no hardship from a stay of her deposition and these proceedings.
This Court, upon receiving information from Reeves that the situation represented an emergency, initiated inquiry into the status of Mary Beth’s reported incarceration, and a panel of Justices of the Court was convened and prepared to consider the Petition. On the afternoon of March 5,1993, this Court, following deliberations, entered an order denying the relief requested in Thomson’s Petition. Subsequently, that afternoon, attorneys for Thomson and counsel for the Plaintiffs were notified by this Court of its ruling.
D.
The following day, Saturday, March 6, 1993, Lowrey and his co-counsel received, via mail, a copy of the Petition and notice from Phelps Dunbar informing them that the Petition had been filed the previous day. According to the documentation in this matter, thereafter, on Monday, March 8, 1993, Low-rey sent this Court a facsimile copy of his basic motion requesting sanctions, and followed with the filing of the Motion for Sanctions, sub judice.
As mentioned previously, the Motion for Sanctions was entitled “MOTION TO CORRECT FACTS CONTAINED IN THOMSON’S SWORN PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS AND RESPONDENT’S MOTION FOR SANCTIONS AND OTHER RELIEF.” The basic purpose of the Motion for Sanctions was two-fold: 1) to request correction of the erroneous and unsupported “facts” presented in Thomson’s Petition; and 2) to request sanctions. The Motion for Sanctions stated, inter alia:
COME NOW, A.G., A MINOR, ET AL, and AJ., A MINOR ET AL, by and through their respective attorneys of record, and .files this their Motion to correct the record as to the “facts” presented to this Court by counsel for John Christian Thomson filed with this Court at 1:31 p.m. on 5 March, 1993 [sic] and also files Respondent’s Motion for Sanctions and other relief, and for cause would show unto this ' Court the following facts:
1. That unknown to the Movants, a Petition for Extraordinary Writ, and for Stay of Deposition and All Other Proceedings, was filed before this Court at 1:31 p.m. on March 5,1993; and
2. Upon receipt of the Petition, via mail, on March 6, 1993, Movants were first made aware of the stated “facts” contained in the sworn Petition before the Mississippi Supreme Court; and
3. That based upon the obligations imposed upon all counsel as officers of the Court and members of the Mississippi State Bar, Movants do hereby state that pertinent information in the Petition was simply untrue as herein set forth....
[[Image here]]
6. The facts as set out in paragraph 3. of Thomson’s Petition did not occur except in the minds of the attorneys filing the Petition. (See transcript of Motion hearings attached hereto as Ex. “A” as well as the transcript of the deposition of Mary Beth Coker Thomson, at *469 tached hereto as Ex. “B”.) Movants did not make a Motion to hold Mary Beth in Contempt nor did she testify in Court, only in the deposition. Further, the Court did not order her arrested for refusing to testify against her husband, nor did she refuse to testify.
[[Image here]]
8. Upon the [lower] Court’s ruling [on the morning of March 5, 1993], Ms. Laura Gibbs [sic], counsel for John Thomson, moved by Motion Ore Tenus for the [lower] Court to stay its ruling in order for John Thomson to seek an Interlocutory appeal which the [lower] Court denied.
9. Movants then asked Thomson’s attorney whether or not she had associate counsel on standby to file an Emergency Writ with the Supreme Court. Ms. Laura Gibbs [sic] refused to admit or deny whether or not such action was planned.
[[Image here]]
12. The deposition took place from 1:00 to 1:17 on March 5,1993. Upon conclusion of the deposition, Movants, with agreement of [Mary Beth’s counsel], agreed to suspend the deposition until the Mississippi Supreme Court could rule on any emergency Writ which may have been filed by John C. Thomson_
13. The Order referred to in the Petition which Movants were to draft for the Court were ordered to be done by the Court at approximately 11:30 a.m. on March 5,1993. Movants did not return to their respective law offices in Hattiesburg until 3:00 on March 5, 1993. It is quite difficult, and some would submit, impossible, to draft an Order for a Court while the proceedings are ongoing.
14. At approximately 4:00 p.m. on March 5, 1993, Movants received a phone call from the Supreme Court clerk’s office advising them that the Petition for Extraordinary Writ had been denied. This was the very first notice that the Movants had received on the filing of such a request.
15. Although this Court has denied the request based upon the alleged “facts” of the Petition, the responsibility still lies on counsel to notify the Court of the appropriate facts of a matter.
[[Image here]]
Movants request this Court for Sanctions including, but not limited to [sic] costs and attorneys’ fees be [sic] awarded against the Petitioning party(s) pursuant to MSCR 36 and 38 [sic], and further, for this Court to grant such other and additional relief as equity and justice require,
(emphasis added).
E.
On March 9, 1993, this Court received a letter of apology which was typed on Phelps Dunbar letterhead with Reeves’ typewritten name as the signatory party, but actually signed with Trapp’s signature on behalf of Reeves (“Reeves’ Letter”). That letter stated, inter alia, as follows:
On Friday, March 5, 1993, at approximately 1:40 p.m., I filed a Petition for Extraordinary Writ, and for Stay of Deposition and All Other Proceedings in the above styled matter. After receiving a telephone call from Laura Limerick Gibbes of our office regarding the . denial of a Motion for Protective Order and the proceedings which had occurred in the Court below, I finalized the petition and prepared the documents for filing for the Petition for Extraordinary Writ.
Ms. Gibbes reported these matters to me late in the morning. I attempted to finalize and file the petition with this Court before Mary Beth Coker Thomson’s deposition began at 1:00 p.m. During the haste to get these documents filed, I made an error in the petition. I realized this error on Monday, March 8,1993.
The Petition [sic] on page 3 at ¶ 3, states the following:
In this petition, John, on behalf of himself and his wife, seeks emergency relief from the Chancellor’s order finding Mary Beth in contempt of court and ordering her arrest for refusing to testify against her husband in a deposition in some of the civil matters. In addition, he seeks a stay of the execution of order of civil contempt.
*470 This did not occur in the trial court below.... The trial judge did not find Mary Beth in contempt of court. He did not order her arrest for refusing to testify against her husband in the depositions.
[[Image here]]
This Court has now denied our petition. Nevertheless, I want to bring this error to the Court’s attention. In no way were we attempting to deceive this Court.
... I apologize to this Court, the trial court and all interested parties for the error.
F.
Thereafter, on March 18, 1993, Trapp, Reeves and Gibbes, on behalf of Thomson, filed a response to the Motion for Sanctions. That document was entitled “RESPONSE TO MOTION TO CORRECT FACTS CONTAINED IN THOMSON’S SWORN PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS AND RESPONDENT’S MOTION FOR SANCTIONS AND OTHER RELIEF” (“Response”).
The Response reiterated the events leading up to, and including, the motions argued before Chancellor Sebe Dale, Jr., on the morning of March 5, 1993, in Columbia, Mississippi, and the manner in which the Petition was generated and filed with this Court, stating, inter alia, that:
6.[T]he oral rulings of the [lower] Court were relayed by Ms. Gibbes to Carlton Reeves in her firm’s Jackson office. Mr. Reeves then finalized a Petition for Extraordinary Writ, and for Stay of Deposition and All Other Proceedings in order to try to file it with the Mississippi Supreme Court before the deposition commenced at 1:00 p.m.
[[Image here]]
7. Concurrent with the taking of the deposition of Mrs. Thomson, the Petition for Extraordinary Writ, and for Stay of Deposition and All Other Proceedings was filed with this Court[2]....
8. On the morning of Monday, March 8, 1993, counsel for Mr. Thomson noted that, in the rush to get the Petition filed, an error had been made in the Statement of Facts. Counsel then wrote a letter [Reeves’ Letter] to the Mississippi Supreme Court Clerk calling attention to the error and requesting that the error be corrected.... Copies of counsel’s letter were faxed, hand delivered and/or mailed to the Mississippi Supreme Court Clerk, the three Supreme Court Justices that had considered the Petition, Judge Dale, and all counsel of record.
[[Image here]]
10. ... Accordingly, counsel for Defendant John Thomson is in agreement that a correction of the record should be made.... However, to the extent that Respondents’ Motion for Sanctions may be premised upon factual errors that existed in the original Petition for Extraordinary Writ, counsel would respectfully submit that such an award is not warranted. The error was corrected by defense counsel as soon as possible. In addition, the error, while a grievous one, did not affect the legal merits of the competency issue raised in the Petition. Finally, counsel would note that the Petition for Extraordinary Writ was denied in full by this Court, thereby establishing that Respondents suf *471 fered no prejudice as a result of the error that was contained in the Petition,
(emphasis added).
In the Response, counsel for Thomson argued that the legal merits to the spousal competency issue precluded characterizing the filing of the Petition as frivolous. Thomson’s counsel requested “an oral hearing of this matter pursuant to Miss.Sup.Ct.R. 2(b),” and contended that the sanctions sought were inappropriate because entitlement to sanctions was governed by Miss.Sup.Ct.R. 36 and 38, and that the Motion for Sanctions had failed to demonstrate satisfaction of the criteria of those rules.
G.
By letter dated April 21, 1993, Trapp notified this Court that the two underlying chancery court cases had been resolved by settlement between the parties. Trapp intimated that, since the underlying cases had been settled, the Motion for Sanctions was a nullity, stating that:
While we are in agreement with the Respondent’s motion to correct facts, the above settlements, I believe, render that motion moot. I and no one from this firm were involved in the settlement negotiations with Plaintiffs’ counsel; however, their Motion for Sanctions is not addressed in the release or other settlement documents, thus remain for consideration.
Lowrey, one of the attorneys for Plaintiffs, upon receipt of a copy of Trapp’s April 21, 1993, letter, responded by letter dated April 26,1993. There, Lowrey stated:
That the underlying matters did settle and the law firm of Phelps Dunbar was not involved in the settlement.
... It was the understanding of all counsel attending the hearing that we were settling all matters with the exception of the above styled Motion in the Mississippi Supreme Court.... The first draft of the releases included attorneys which was objected to by the Plaintiffs and the same was removed from the final version.
It was for these reasons that no notice was given to dismiss the Motion pending before the Mississippi Supreme Court. We do not wish to dismiss the Motion nor do we believe that the matter is moot.
H.
Subsequently, this Court notified Thomson’s counsel that their request for an oral hearing on the matter had been granted, and the hearing date was set for 9:30 a.m., June 7, 1994. That notice informed those attorneys that, at the scheduled oral hearing, in addition to the matters set out in the Motion for Sanctions, this Court desired that those attorneys address the following: 1) whether counsel for Petitioner provided all other parties with reasonable notice of filing the Petition for Extraordinary Writ and for Stay of Deposition and All Other Proceedings with this Court; 2) whether the facts and matters presented to and acted upon by this Court in the Petition were correct and appropriate; 3) whether the letter dated April 21,1993, from Frank W. Trapp to this Court accurately informed this Court as to the status of the Motion for Sanctions, in light of the settlement of cases underlying this appeal; and 4) whether sanctions should be imposed against Carlton W. Reeves, Laura L. Gibbes, Frank W. Trapp, and the law firm of Phelps Dunbar.
The oral hearing was held on June 7,1994, as scheduled. Among others, Trapp, Reeves, Gibbes, and Lowrey were present at the hearing. In addition to representing himself personally, Trapp stated that he was also representing the Phelps Dunbar law firm. Trapp, Gibbes and Reeves responded to questions from Justices of this Court at the oral hearing. Additionally, they were afforded opportunity to comment on the matter or otherwise explain the circumstances surrounding their actions, after which the oral hearing concluded that same day, June 7, 1994.
II.
Upon due consideration of the record in this matter, the Petition, the Motion for Sanctions, the Response, and the revelations from the June 7, 1994, oral hearing, I would find that only the conduct and actions of Reeves before this Court warrant sanctions.
*472 Although not affecting the disposition of this matter, two points should be illuminated at the forefront. First, at the time of Mary Beth’s deposition, 1:00 p.m., March 5, 1993, and the filing of the Petition at 1:31 p.m., March 5, 1993, Gibbes, counsel for a Defendant, and Lowrey, counsel for the Plaintiffs, both possessed knowledge that Mary Beth would not, in all probability, offer any substantive testimony at the scheduled deposition. At the motion hearings before the chancellor on the morning of March 5, 1993, Mary Beth’s lawyer announced to the chancellor that he had planned all along to have Mary Beth take the Fifth Amendment. Both Gibbes and Lowrey were present in the courtroom at that time.
Second, it is quite apparent from the information before us that defense counsel for Thomson attempted to utilize procedural devices to either impede completion of discovery on a timely basis or to hinder ultimate resolution of the controversy between the litigants. From the record, I note several pre-trial appeals and motions for protective orders or to stay proceedings.
Apparently, the consternation between these attorneys involved the possibility of a negative inference that the attorneys, both Plaintiffs’ and Defendants’, believed could be gained if Mary Beth refused to answer questions posed to her while she was under oath at the deposition. Ostensibly, according to that rationale, the refusal of Mary Beth, a witness, to answer such questions on the basis of the Fifth Amendment, would result in a negative inference attributed to Thomson, a party to litigation.
We do not comment on the merits of the underlying cases, the purported spousal competency issue or the availability or impact of a negative inference, nor do I comment on the rulings of the chancellor at the March 5, 1993, motion hearings. At issue, for this Court’s consideration, is the conduct and actions of the attorneys.
III.
On June 15,1987, by “Order Adopting the Mississippi Supreme Court Rules,” former Chief Justice Harry G. Walker, on behalf of the Supreme Court of Mississippi, declared that adoption of the Mississippi Supreme Court Rules (“Rules”) should promote “the fair and efficient administration of justice.” That Order also stated that the Mississippi Supreme Court Rules shall “govern[ ] all proceedings in the Supreme Court of Mississippi and within the lower courts of this state to the extent provided in said Rules,” and that the comments to those Rules “shall be used by all courts as authoritative guides to the correct interpretation” of the Rules.
Today, I write to emphasize and remind attorneys of the spirit and purpose of the Rules, as well as the purpose of the requirement of attorneys’ compliance with rules— “the fair and efficient administration of justice.” That same purpose is expressed in the Comment to Miss.Sup.Ct.R. 2, which states, inter alia:
Perpetuating the spirit underlying the former rules of the Mississippi Supreme Court, the present rules will be construed to facilitate the just and efficient disposition of causes brought before the Court. Accordingly, compliance with even the most technical requirements of rules is encouraged.
[[Image here]]
Rule 2(b) states the Court’s inherit disciplinary authority over parties and officers of the court.
(emphasis added).
This Court considers penalties and sanctions against attorneys. Our authority and jurisdiction to assess penalties or impose sanctions against attorneys arises from varied sources, embracing specific rules as well as broad declarations. Illustrative, and not by way of limitation, of the specific rules pronouncing this Court’s authority to assess penalties or sanction attorneys, are Miss.Sup. Ct.R. 1, 2, 28, 34, 36, 38, and 46, as well as Miss.Code Ann. § 73-3-301 (1989).
More specifically, the language of Miss. Sup.Ct.R. 2(b) makes it clear that attorneys are subject to sanction, stating as follows:
The Court may, after reasonable notice and opportunity to show cause to the contrary, and after hearing, if requested, impose such sanctions as may be appropriate *473 on any party, court reporter, trial court clerk, or attorney who fails to comply with these rules or any order issued pursuant to these rules.
(emphasis added). And, according to Miss. Sup.Ct.R. 46(d):
Every petition, motion, brief, or other paper filed by a party represented by an attorney shall be signed by at least one attorney of record in the attorney’s individual name, whose address shall be stated. The Court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar, or for failure to comply with these rules or any order of this Court, or for filing a frivolous petition, motion, brief or other paper.
(emphasis added).
[[Image here]]
After careful review and consideration, I would find that the imposition of sanctions against Carlton W. Reeves would be appropriate under, but not necessarily limited by, Miss.Sup.Ct.R. 2(b) and 46(d).
IY.
It was admitted at the oral hearing that the chancellor did not find Mary Beth in contempt; that the chancellor did not order Mary Beth incarcerated for refusing to answer questions; and that the plaintiffs’ attorneys had not made a motion to hold Mary Beth in contempt for refusing to answer the deposition questions.
It is also clear that these attorneys were sparring, not necessarily over substantive testimony to be gained in Mary Beth’s deposition, but over procedural or tactical advantage. As related by Lowrey at the oral hearing:
We filed this suit [chancery court eases] in December 1991, and we were set for trial in April, 1993....
[[Image here]]
... [T]he reason why I was requesting whether or not Mrs. Gibbes and Trapp and Phelps Dunbar were going to file a motion in the Supreme Court was because that had been the normal course of events. For some reason or another, we seem to be able to get to the Supreme Court, but we could not get to trial....
[[Image here]]
... I did not care what Mary Beth Thomson said. [Mary Beth’s attorney] had told us time and again that she was going to take the 5th amendment [sic]. That was fine for us, as long as we could put her on a horse that she had to ride and she could not change at the time of trial.
At the oral hearing, Trapp revealed, as was later reiterated and confirmed by Gib-bes, their motive for opposing Mary Beth’s deposition, stating as follows:
She just took the fifth. And Mr. Erik [Lowrey] recognized that he didn’t care about that because the Court would be able to take certain assumptions from that. Now that would be an issue I would take— I would take issue with that, but I would probably have lost that also. But it’s because you have her testimony. Even though it is not factual in nature, he gets to ask any question, and then he would ask when she takes the fifth that you take an adverse inference. That’s more powerful than the answer.
It follows from Trapp’s rationale that, if Mary Beth were forced to appear at a deposition, she would take the Fifth Amendment and refuse to give substantive factual testimony. But, nonetheless, an adverse inference might still be used to harm Thomson’s case. However, if Mary Beth was never forced to give deposition testimony, under the umbrella of spousal incompetency, then she could possibly avoid taking the Fifth Amendment, and no adverse inference could arise therefrom.
A. CARLTON W. REEVES (“REEVES”)
According to Reeves, Gibbes telephoned him on the morning of March 5, 1993; related the chancellor’s oral rulings emanating from the motion hearings; and instructed him to finalize and file the Petition. At the oral hearing on the Motion for Sanctions *474 (“oral hearing”), Reeves admitted that the Petition contained wholly erroneous facts, and he admitted his culpability for it, stating, “I made the mistake of allowing that pleading to be filed as written in Paragraph 3.”
Reeves stated that he had tried to get the Petition filed before 1:00 p.m., the time at which the deposition was scheduled to commence. However, by the express language of the Petition, the deposition had already begun, and the chancellor had found Mary Beth in contempt and ordered her incarcerated for refusing to answer questions. Therefore, if Reeves had actually filed the Petition before 1:00 p.m., it would, nonetheless, have been a misrepresentation of facts concerning the deposition and the chancellor’s alleged actions. As it occurred, however, Reeves did not actually file the Petition until 1:31 p.m., March 5, 1993. Since the deposition had concluded earlier, at 1:17 p.m., the requested stay of the deposition was procedurally frivolous, and the alleged finding of contempt and order of incarceration by the chancellor constituted patent misrepresentations. The deposition had concluded earlier than the time at which Reeves filed the Petition. Therefore, since Mary Beth had not been found in contempt and no order of incarceration existed, the requested “emergency interim relief from the Chancellor’s order finding Mary Beth in contempt of court and ordering her arrest for refusing to testify against her husband in a deposition” (“Paragraph 3.”), and the requested “stay of the execution of order of contempt,” were frivolous — nullities without any hope of success. See Roussel v. Hutton, 638 So.2d 1305, 1317-18 (Miss.1994); Bean v. Broussard, 587 So.2d 908, 911-12 (Miss.1991); Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331,1336 (Miss.1989).
The language of Paragraph 3 contained erroneous facts. Those erroneous facts were a material element of the Petition; it alleged that the Petition represented an “emergency,” and for that reason it should be considered by a panel of Justices of the Supreme Court of Mississippi, immediately upon filing. Without that “emergency” feature, it cannot be said, unequivocally, that the Petition would have otherwise been considered an “emergency” matter subject to immediate consideration by this Court. However, Reeves’ explanation that it was simply negligence in copying from a prior motion is accepted.
When asked why he did not “fax” a copy of the Petition when he filed it, Reeves admitted fault once again. He revealed that he had previously discussed the “notice” requirements with Gibbes, and the decision made that “proof of service could be by mail.” However, he characterized his actions as amounting to negligence, stating, “Judge, that was just — that was just negligence on my part.... [I]t was not any deliberate attempt on my part.” This we accept without further comment.
The Petition explicitly stated that it was being filed “pursuant to Miss.Sup.Ct.R. 8 and 21.” According to the language of Miss.Sup. Ct.R. 8, “reasonable notice” shall be given to all parties.
At the oral hearing, Reeves admitted that he had called a staff attorney with this Court prior to filing the Petition, advising that staff attorney that a request for emergency relief was forthcoming, and, as a consequence, Reeves requested that a panel of Justices of this Court be prepared to consider the requested relief at 1:00 p.m., March 5, 1993. Yet, Reeves testified that he “mailed” notice of the Petition to opposing counsel, deeming such as “reasonable notice” despite the fact that he had requested “emergency relief,” including a stay of the planned 1:00 p.m. deposition. That notion is astounding.
Copies of papers filed with this Court may normally be served upon opposing counsel either by personal service or by mail. Miss. Sup.Ct.R. 25. However, prudence and common sense dictate that responsible attorneys recognize that, in certain situations, notice received after the fact is no notice at all. In a purported “emergency” situation, reasonable notice necessarily connotes meaningful notice, and if the only means to achieve meaningful notice is through personal service, then service by mail is no substitute.
Unless specifically provided for to the contrary by the Mississippi Supreme Court Rules, “reasonable notice” in a purported *475 emergency” situation entails either telephonic notice, notice in person, or notice by transmission of a facsimile (“fax”), before the filing of the document requesting emergency relief, or at the very least, no later than “at the time” of filing of such document.
Reeves failed to fulfill basic requirements of careful drafting and preparation of pleadings and other documents to be filed with this Court, and compliance with the directive that our Rules, including those governing “notice,” must be “construed to facilitate the just and efficient disposition of causes brought before the Court.” Miss.Sup.Ct.R. 2.
Reeves drafted and signed the Petition which contained untrue statements, and filed it with this Court. He now admits that it was an error for the Petition to be filed containing the language of Paragraph 3. As a result, the filing of the Petition constituted negligent misrepresentation of material facts. Furthermore, Reeves did not comply with the mandate that notice be given to opposing counsel in a manner that provides “reasonable notice” under the circumstances presented.
Upon a hearing on the matter, Reeves was unable to show cause why he should not be sanctioned for his actions. See Crawford v. Wall, 593 So.2d 1014 (Miss.1992); Russell v. Lewis Grocer Co., 559 So.2d 1052 (Miss.1990). Accordingly, I would impose sanctions upon Reeves in the amount of $300.00.
y.
The Court is deeply concerned with unwarranted, so-called “emergency” petitions and motions filed with this Court which, in most instances, either result in suspension of trial proceedings or actually deter the commencement of the trial because of filing such petitions or motions during the discovery stage of the litigation. Such abuse of the judicial process has greatly contributed to the backlog of cases before this Court.
Abuse of the judicial process also arises from the failure of attorneys to fulfill their concurrent duties. The practice of law is a profession, and practicing attorneys are officers of the court. They are charged with faithfully performing the duties incumbent upon those participating in the profession. But, there exists not a singular duty which attorneys must fulfill; there are many. Attorneys not only owe a duty to their clients, they also owe a concurrent duty to this Court, the trial courts, and other attorneys. As officers of the court, attorneys may not claim “zealous representation of a client” as absolution for failure to properly discharge all duties imposed upon that lawyer. Consequently, attorneys must not neglect any one of those duties for the sake of another, but must balance all those duties with professional dignity.
This is but one opinion. However, a clear message is conveyed herein to practicing attorneys in Mississippi regarding this Court’s attitude concerning the promotion of the fair and efficient administration of justice. Justice delayed is often justice denied; therefore, rules governing the procedures for litigation should be construed in favor of achieving a resolution of litigation between parties. Failure to comply with this Court’s Rules, by filing a frivolous motion, instituting an unwarranted procedure or by displaying conduct unbecoming a member of the bar, whether during the discovery stage, in pretrial motions, or at trial, may impede or interfere with the disposition of litigation and the fair and efficient administration of justice. This Court will not tolerate such actions, and neither should the trial courts of Mississippi.
That part of the “MOTION TO CORRECT FACTS CONTAINED IN THOMSON’S SWORN PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS AND RESPONDENT’S MOTION FOR SANCTIONS AND OTHER RELIEF” requesting that the facts of Paragraph 3 of the Petition be corrected is hereby granted. That part of the “MOTION TO CORRECT FACTS CONTAINED IN THOMSON’S SWORN PETITION FOR EXTRAORDINARY WRIT, AND FOR STAY OF DEPOSITION AND ALL OTHER PROCEEDINGS AND RESPONDENT’S MOTION FOR SANCTIONS AND OTHER RELIEF” requesting sanctions (for *476 actions before this Court) and other relief is denied.
HAWKINS, C.J., and McRAE, J., Concur.
HAWKINS, C.J., writes separately and is joined by DAN M. LEE, P.J.
McRAE, J., writes separately and is joined by DAN M. LEE, P.J.
SMITH, J., writes separately and is joined by PRATHER, P.J., and JAMES L. ROBERTS, Jr., J.
SULLIVAN, PITTMAN and BANKS, JJ., not participating.

. We do not intimate herein, any opinion regarding the merits of Thomson’s trial court motions or the chancellor’s rulings on those motions.

. The Petition was not filed concurrent "with the taking of the deposition" of Mary Beth. As plainly reflected in Exhibit "E” to the Response itself, which was filed and signed by Trapp, Reeves and Gibbes, Mary Beth’s deposition commenced at 1:00 p.m. and was recessed at 1:17 p.m., March 5, 1993. As admitted in Reeves' Letter which is attached as Exhibit "G” to the Response filed and signed by Trapp, Reeves and Gibbes, "[o]n Friday, March 5, 1993, at approximately 1:40 p.m., I [Reeves] filed a Petition for Extraordinary Writ, and for Stay of Deposition and All Other Proceedings....” Consequently, the emergency relief requested by the Petition could not have been granted by this Court, as far as the 1:00 p.m., March 5, 1993, deposition of Mary Beth was concerned. A fortiori, the tardiness of the request rendered it procedurally frivolous.