ROBERTS, J.,
concurring:
¶ 15. I concur with the majority that the grant of rehearing is appropriate and that the judgment of the trial court should be affirmed. The majority has given a suitable account of the facts in the instant case, so they will not be reiterated here. Since I joined the majority in our original opinion to reverse, I write separately to explain briefly why I have now concluded that the trial judge was correct when he considered whether Edwin Broussard’s counsel’s actions were egregious and when he denied Illinois Central Railroad Company’s motion seeking attorneys’ fees.
¶ 16. In our prior decision, the majority focused solely on the frivolity of Brous-sard’s suit because it was discovered that Broussard died one year and eight months before the complaint was filed. At first blush, filing a personal injury suit for a plaintiff who died twenty months earlier appears to be sanctionable. Undoubtedly, the suit was frivolous in the sense that the plaintiffs counsel had no hope of success, but after further consideration and research of both Mississippi state and federal case law, I do not believe that the intent, knowledge, diligence, or lack of diligence of a party or his counsel can be dissociated from other factual circumstances when determining whether sanctions are appropriate.
¶ 17. In Thomas v. Capital Security Services, Inc., 836 F.2d 866, 876-81 (5th Cir.1988), the United States Fifth Circuit Court of Appeals rendered a thorough opinion discussing the purposes of the 1983 amendments to Rule 11 of the Federal Rules of Civil Procedure, the appropriate standard of review for violations, a trial judge’s duty when violations are found, and under what type of circumstances are sanctions appropriate.[1] Thomas clearly states that the purpose of Rule 11 sanctions are to thwart frivolous litigation[2] and check abuses in the signing of pleadings. Id. at 870, 874. The pivotal point in time to assess a party’s or attorney’s actions is the instant when the signature is placed upon the document. Id. at 874. And, compliance under Rule 11 is an objective, not subjective, standard of reasonableness under the circumstances. Id. at 873 (citation omitted). Additionally, Rule 11 imposes affirmative duties, which an attorney or litigant certifies he has complied with, when he or she signs a pleading, motion, or document. Id. at 873-74. These duties are: (1) the attorney has conducted reasonable inquiry into the facts supporting the claim; (2) the attorney has conducted reasonable research into the law, so that the legal document embodies existing legal principles or a good-faith argument for the pleading or motion; and (3) that the motion is not made for the purposes of delay, harassment, or increasing the costs of litigation. Id. at 874. Along with the objee- *826 tive standard of reasonableness and the affirmative duties imposed upon an attorney, the Thomas court recognized that the court considering sanctions “should consider the state of mind of the attorney when the pleading or other paper was signed” when determining the severity of sanctions. Id. at 875 (citation and internal quotation omitted). In other words, it is improper to consider the merit of the document in isolation of the intent or diligence of the pleader.
¶ 18. In the recent case of lowers v. BOC Group, Inc., 608 F.Supp.2d 724 (S.D.Miss.2009), the United States District Court for the Southern District of Mississippi thoroughly analyzed Mississippi case law pertaining to an award of attorney’s fees. In lowers, the district court stated that “it appears the rule in Mississippi is that the proof necessary to justify a fee award is tantamount to and coextensive with the proof necessary to obtain punitive damages.” Id. at 780. It is well-settled law that “[pjunitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme.” Warren v. Derivaux, 996 So.2d 729, 738(¶ 28) (Miss.2008) (citation omitted). In light of these authorities, it is clear that a mere mistake, based upon an objectively reasonable belief, is insufficient to warrant sanctions even when that mistake inadvertently results in a frivolous pleading.
¶ 19. The Mississippi Supreme Court case Bean v. Broussard, 587 So.2d 908 (Miss.1991) is analogous to the instant case. In Bean, a Mississippi attorney was contacted by an attorney from Louisiana who told him that he had been retained several months earlier to file a medical malpractice suit. Id. at 910. The Louisiana attorney assured Bean, the Mississippi attorney, that he had investigated the facts of the case, and he also assured Bean that the case was meritorious. Id. The statute of limitations was set to expire the next day, so in order to avoid the claim being procedurally barred, Bean filed suit based upon the Louisiana attorney’s representations without any independent investigation. Id. After depositions were conducted, Bean realized the case was without merit, and he sought to withdraw as counsel. Id. at 910-11. The defendant requested that the court impose Rule 11 sanctions upon Bean arguing that he signed a frivolous complaint for the purpose of delay. Id. at 911. The trial court granted a monetary sanction. Id. However, the supreme court reversed and remanded, stating that: “While it [was] true that the complaint was filed when it was filed in an effort to toll the statute of limitations^] mere ‘delay’ was not the objective. The objective was to preserve or[,] more accurately!,] to assert what could be objectively viewed as a viable cause of action.” Id. at 913. In Bean, the supreme court did not look solely at the frivolity of the complaint, but it considered Bean’s rationale and objective belief in bringing the claim, as well as Bean’s desire to preserve his client’s cause of action. The instant case involves the same type of situation.
¶ 20. I do not suggest that a plaintiff or his or her attorney is given a free pass to be dilatory in his or her efforts to confirm that the pleadings he or she files have merit just because his or her subjective intent is to bring a meritorious claim or to survive a statute of limitations. After all, they have the affirmative duty of reasonable inquiry into the facts and law of the case. However, that fact does not vitiate the plaintiffs or their attorney’s objective *827 ly reasonable belief at the time of the filing. It is apparent, Broussard’s attorney was faced with a dilemma or a “Morton’s Fork” situation.[3] As stated by the majority, Broussard’s attorney was faced with refiling a voluminous amount of claims within one year, due to changes in the law. Just as in Bean, Broussard’s attorney had the duty to ensure that his client’s claim was not lost due to the expiration of the statute of limitations, as well as making sure that the claims were meritorious. Broussard’s attorney risked legal malpractice, if he allowed the statute of limitations to run, or risked sanctions if he later found that circumstances had arisen which would render the pleading frivolous. Indeed, either possibility was an unfavorable choice.
¶ 21. Given that it is undisputed that the claim had merit when it was originally filed, it was objectively reasonable for Broussard’s attorney to think that the claim was still viable at the subsequent filing less than a year later. Although the record is rather scant, it appears that Broussard’s attorney was diligent in trying to locate Broussard. Both parties agree that it was after Broussard’s attorney sought to withdraw, due to his inability to contact his client to respond to pending discovery, that it was discovered that Broussard was deceased. Certainly, it would have been better if Broussard’s attorney, rather than Illinois Central’s attorney, had thought to contact the Mississippi Department of Health and Vital Statistics to verify whether Broussard had died, but I agree with the trial judge and cannot find that decision, or the lack thereof, to be negligent to the extent of establishing egregious behavior. Even Illinois Central’s attorney acknowledged that he did not research and discover that Broussard had died until Broussard’s attorney asked him to agree to a dismissal of the action.
¶ 22. At the motions hearing, Illinois Central’s attorney stated that he was not accusing Broussard’s counsel of “doing anything intentional.” However, he stated that his client had unnecessarily incurred attorney’s fees, and he thought that his client was entitled to its money back. Incurring fees alone is insufficient to warrant Rule 11 sanctions. Whether sanctions are viewed as a cost-shifting mechanism or compensation for opposing parties injured by frivolous or vexatious litigation, it is important to remember that the imposition of sanctions pursuant to Rule 11 is meant to deter an attorney from violating the rule. Thomas, 836 F.2d at 877 (citing Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir.1987)). “Sanctions should also be educational and rehabilitative in character and, as such, tailored to the particular wrong.” Id. Though I admit this is a close case, after further review of the case law, record, unique facts in the instant case, and upon mature reflection, I must conclude that the trial judge did not abuse his discretion in determining that sanctions were unnecessary to deter Broussard’s attorney from violating Rule 11 or Mississippi Code Annotated section 11-55-5 (Rev. 2002), nor did he err in finding that sanc *828 tions were inappropriate because Brous-sard’s attorney lacked egregious behavior.
GRIFFIS AND CARLTON, JJ„ JOIN THIS OPINION.

. The supreme court routinely looks to federal case law for guidance in construing the Mississippi Rules of Civil Procedure because they were patterned after the Federal Rules of Civil Procedure. MS Comp Choice, SIF v. Clark, Scott & Streetman, 981 So.2d 955, 959(¶ 13) (Miss.2008) (citations omitted).

. Many courts have recognized that the purpose of Rule 11 sanctions is to streamline the litigation process by discouraging the use of dilatoiy or abusive tactics, such as the filing of frivolous claims or defenses or the use of pleadings to harass or delay. See Kathleen M. Dorr, Annotation, Comment Note — General Principles Regarding Imposition of Sanctions Under Rule 11, Federal Rules of Civil Procedure, 95 A.L.R. Fed. 107 (1989); Thomas, 836 F.2d at 870, 874; Davis v. Veslan Enterprises, 765 F.2d 494, 500 (5th Cir.1985).

. The expression, "Morton's Fork" originates from a policy of tax collection devised by John Morton, Lord Chancellor of England in 1487, under the rule of Henry VII. His approach was that if a subject lived a life of luxury, then clearly he spent a lot of money and, therefore, had sufficient income to spare for the king. However, if the subject lived frugally, and did not display signs of wealth, then apparently he had substantial savings and could then afford to give it to the king. These arguments were the two prongs of the fork and regardless of whether the subject was rich or poor, he did not have a favorable choice. http://www.britannica.com/ EBchecked/topic/393253/Mortons-Fork.